# IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO

Carolyn Leick  :
2405 Marblevista Blvd.  :  Case No. _____
Columbus, OH 43204  :
  :
    Plaintiff  :
  :
  :  Judge: _____
    vs.  :  :
  :
Maryhaven Inc.  :
1791 Alum Creek Dr.  :
Columbus, OH 43207  :
  :
Ryan Pickut  :  JURY DEMAND
2193 Parklawn Dr.  :
Lewis Center, OH 43035  :
  :
Edwin Huston  :
5731 Albany Trace  :
Westerville, OH 43081  :
  :
    and  :
  :
Alicia Fillibeck  :
5282 Forest Run Dr.  :
Dublin, OH 43017  :
  :
    Defendants  :

<u>COMPLAINT</u>

I. PRELIMINARY STATEMENT

1. Plaintiff Carolyn Leick brings this action against Defendants Maryhaven, Inc., Ryan Pickut, Edwin Huston, and Alicia Fillibeck for violations of Ohio Revised Code Chapter 4112,

1

including R.C. §4112.99, R.C. §4112.02(A) and R.C. §4112.02(L), as well as for Maryhaven Inc.'s violations of the Age Discrimination in Employment Act (29 U.S.C. 621 et seq.) and the Americans with Disabilities Act as Amended (42 U.S.C. 12101 et seq.).

II. JURISDICTION AND VENUE

2.  By virtue of R.C. §4112.99, this Court has subject matter jurisdiction over Plaintiff's state law claims against all Defendants and has concurrent subject matter jurisdiction over her federal law claims against Maryhaven, Inc.

3.  Venue is proper in Franklin County as Defendant Maryhaven Inc.'s principal offices are located in Franklin County and Plaintiff entered into her employment relationship with it and performed her employment functions here in Franklin County, Ohio. The unlawful discriminatory acts of which Plaintiff complains also occurred in this county.

III. THE PARTIES

4.  Plaintiff is a resident of Franklin County and is 81 years of age. Plaintiff holds two master's degrees, a Doctor of Education degree and a Certificate of Advanced Study toward a Doctor of Counseling degree (abd) and an Ohio LPC (licensed professional counselor) license. Plaintiff's son, Thomas Leick, is afflicted by Cerebral Palsy and mild mental retardation.

5.  Defendant Maryhaven, Inc. ("Maryhaven") is an Ohio non-profit corporation that provides services to clients whose diagnoses include mental illness and/or alcohol and other drug addictions, including emotional/mental counseling services to individuals who suffer from alcohol and/or narcotics addiction.

6.  Defendant Ryan Pickut ("Pickut") is employed by Maryhaven and, during all relevant times, functioned as Plaintiff's second-tier supervisor.

2

7. Defendant Edwin Huston ("Huston") was employed by Maryhaven and functioned as Plaintiff's first tier or "immediate" supervisor while she was assigned to Maryhaven's "Federal Unit"[1] from October of 2017 to June of 2019. Huston, in turn, was supervised by Pickut.

8. Defendant Alicia Fillibeck ("Fillibeck") was employed by Maryhaven and functioned as Plaintiff's immediate supervisor while Plaintiff was assigned to Maryhaven's "South High Street Unit"[2] from June to September 26, 2019, at which time Plaintiff's employment was terminated. Fillibeck likewise was supervised by Pickut.

IV. OPERATIVE FACTS

9. In October of 2017, Maryhaven hired Plaintiff as an Adult Outpatient Services addiction/mental illness "Counselor III." In connection with establishing her eligibility to work, Plaintiff provided Maryhaven's Human Resources Office with her Ohio driver's license. The Human Resources Office made a copy of it.

10. Initially, Plaintiff was assigned to Maryhaven's Federal Unit under Huston's supervision. At the time of reporting for work, Huston advised her that Maryhaven would provide a mentor who would assist her in qualifying for the next higher license, the LPCC (Licensed Professional Clinical Counselor) license.

11. After Plaintiff had reported for work, Huston asked to see her driver's license. While driving is not a function of Plaintiff's Counselor III position, she complied with her supervisor's request. Several weeks later Huston again asked to see Plaintiff's driver's license. Although he

---

[1] This unit derives its colloquial designation from its main source of funding, i.e., federal funds.

[2] This unit derives its colloquial designation from its geographical location.

3

offered no reason for wanting to see it, Plaintiff again obliged. Huston then left the office with Plaintiff's license in hand and returned approximately 15 – 25 minutes later.

12.  Subsequently Huston advised Plaintiff that the mentor she had been promised was "too busy" to mentor her. Instead, the proposed mentor was providing mentoring services to a Maryhaven Intern who was substantially younger than Plaintiff. The Intern did not hold the LPCC's gateway license, the LPC, and lacked any master's degree.

13.  Huston told Plaintiff it was Maryhaven's practice to evaluate new employees every six months, including at the end of their probationary period and again on their first employment anniversary. Maryhaven's Employee Handbook states:

> Annual performance appraisals are conducted after the probationary period is satisfactorily completed. The annual appraisal is conducted on the approximate anniversary date of employment at Maryhaven.

14.  Although Plaintiff was evaluated at the end of her six-month probationary period, Huston and Pickut did not evaluate her performance on her first employment anniversary or thereafter, although she did receive an increase in salary after her first year of employment.

15.  As Plaintiff was preparing to depart for her second one-week vacation during May of 2019, Huston requested that she take work along to be performed while on vacation. Plaintiff demurred, advising Huston that she would be busy attending medical appointments with her disabled son. Huston appeared to resent the son's medical appointments detracting from Plaintiff's willingness to work while on vacation notwithstanding her continued presence in the active work force. At that point Huston stated: "When I'm seventy, I plan to be living in Florida lying on the beach every day!" And, on other occasions, Huston interrogated Plaintiff about why she was "still working?" Plaintiff responded that she and her disabled son had significant financial needs which included appointments with medical doctors and Ph. D Clinical

4

Psychologists that Thomas had requested her to attend. Plaintiff stated she had to continue working in order to meet those needs.

16. After Plaintiff returned from her 2019 vacation, Huston began criticizing her work which, on information and belief,[3] Plaintiff avers contained no more errors and was no less productive than that of the other counselors in the Federal Unit.

17. Maryhaven's Employee Handbook provides:

> Poor job performance will be addressed in regular or supplemental performance evaluations. Poor performance, as distinguished from misconduct, will normally not result in termination of employment until the employee has been notified of the performance deficiency and been given a reasonable opportunity to correct the deficiency.

To Plaintiff's knowledge, neither Huston nor Pickut ever evaluated her after her end-of-probation evaluation and no "regular or supplemental performance evaluations" were provided to her after that end-of-probation evaluation.

18. One of Huston's criticisms of Plaintiff's performance was that she was a member of "the Establishment" and—according to Huston—she naively believed the addicts she counseled were capable of "improving" in their emotional stability and ability to remain sober. Huston, on the other hand, believed the addicts were incapable of self-resurrection and, thus, virtually all of them should be classified as "non-improved." He faulted Plaintiff for listing many of her counselees as "improved" or "improving" because that classification made it more difficult for the counselee's overseeing judicial officer to incarcerate him or her.

19. At one point following Plaintiff's return from her 2019 vacation, Huston informed her that due to his dissatisfaction with her performance she should look for employment elsewhere.

---

[3] In the Federal Unit it was the practice of the counselors to circulate their documentary output to the other counselors for review in an effort to detect inadvertent errors. Plaintiff, thus, routinely saw the work documents prepared by the other counselors in the Federal Unit.

5

He did not impose any time limit in connection with the initial directive. Subsequently, however, he informed Plaintiff that she would be released in one month whether she then had obtained other employment or not.

20.     At the time Huston initially advised Plaintiff to seek work elsewhere, she had no written warnings regarding the quality or quantity of her work. Likewise, she had no disciplinary actions concerning either her conduct or attendance.

21.     Huston subsequently indicated to Plaintiff that he had discussed her situation with Pickut and Pickut had decided to transfer her to the South High Street Unit where she would come under Fillibeck's supervision. Fillibeck was a new supervisor for the South High Street Outpatient unit, having started in that position on the day Plaintiff began working there.

22.     On or about June 3, 2019 Plaintiff was transferred to the South High Street unit. There, she was instructed to perform written "assessments" of each of her counselees, a function which she personally had not performed while assigned to the Federal Unit, except during the last month or two before being transferred. While the typical workload of counselors in the South High Street unit was two written assessment per week, Plaintiff voluntarily assumed a load of four assessments per week so she could more quickly become familiar with the process. Additionally, most of the clients for whom she wrote assessments asked her to be their counselor. Plaintiff, thus, viewed undertaking the extra heavy workload as a means of building her roster of clients.

23.     After working at the South High Street unit for approximately two months, Plaintiff met with Pickut and Fillibeck. In that meeting, Pickut asked Plaintiff if she was in "cognitive decline." Plaintiff was taken aback and responded: "No!" Pickut then said Huston had told him

6

she was in cognitive decline. Based on such information, Plaintiff avers that Pickut, Huston and Fillibeck regarded her having a mental impairment, i.e., as being disabled.

24. In the South High Street unit, the established practice was for each counselor to have a weekly one-hour "supervisory session" with his or her immediate supervisor. During Plaintiff's initial supervisory sessions Fillibeck indicated some dissatisfaction with her written assessments of her counselees. Fillibeck also requested that Plaintiff make "corrections" in some of her other counseling documentation,[4] such as her "treatment plans."

25. Allegedly to assist Plaintiff in learning the South High Street unit's written treatment plan procedure, Fillibeck assigned another South High Street unit counselor to work with Plaintiff on such plans. The assigned counselor, however, told Plaintiff that she herself was not very familiar with the written treatment plan processing as Fillibeck wanted it done. Plaintiff found the purported assistance from such other counselor to be of little or no value.

26. Regarding the other corrections Fillibeck requested, Plaintiff faithfully made them, but it was noticed that they were not being saved within Maryhaven's CATT electronic document processing system. When Plaintiff reported this situation to Fillibeck, Fillibeck stated that it was merely "a problem with the CATT system" that Fillibeck herself had experienced.

27. On August 21, 2019 Plaintiff was informed that Maryhaven was dissatisfied with her work and a decision as to whether she would be retained would be made by September 19, 2019. Plaintiff worked diligently on effectuating all "corrections" Fillibeck had asked her to make to her documentations. And, on August 28, 2019 Plaintiff prepared and sent to Fillibeck and Pickut a Memorandum of Accomplishments recounting the progress she had made in productivity and

---

[4] Completion of the counseling documentation was viewed as important by the Defendants since the funding agencies could not be billed for the work until that documentation was finalized.

7

documentation quality since being transferred to the South High Street Unit. Fillibeck, however, then went on a two-week vacation.

28. Upon returning from her vacation, Fillibeck cancelled all of the three supervisory sessions she was to have with Plaintiff. Such supervisory sessions are important since they give the employee an opportunity to learn the supervisor's perception of the quality and quantity of her work output, as well as to hear the supervisor's suggestions for mechanisms or procedures that could help the employee improve her performance levels.

29. On information and belief, Plaintiff avers that during the final week and one-half of her employment at Maryhaven Fillibeck issued three emails that stated criticisms of Plaintiff's work. Plaintiff, however, was not provided with copies of those emails nor an opportunity to attempt to rectify whatever aspects of her performance Fillibeck reportedly was criticizing. Plaintiff further avers that the reported practice at Maryhaven is to provide employees with timely periodic evaluations and an opportunity to correct any legitimate criticisms of their work.

30. Maryhaven's Employee Handbook also states:

> Each employee has the right to review any disciplinary action with the Director of Human Resources and/or the President to present any circumstances or facts which he/she feels should be considered. The employee's statement will become part of his/her employment record. All recommendations of discharge will be subject to review for final decision by the President. While the discharge is being reviewed, a unit supervisor may relieve the employee from assigned duty. The employee will be afforded an opportunity to present his facts and have his or her work record reviewed.

31. On September 26, 2019, Plaintiff was called into a meeting with Fillibeck and a representative of Maryhaven's Human Resources Office. Pickut did not attend. In the course of the meeting Plaintiff asked if Fillibeck had read Plaintiff's August 28 Memorandum of Achievements. Fillibeck admitted she had not done so. Plaintiff then was dismissed from

8

employment. The Human Resources representative stated that the reason for the termination was that the "technology curve" at Maryhaven was "too steep" for Plaintiff.

## FIRST CAUSE OF ACTION

(Age Discrimination - Violation of R.C. §4112.02(L) )

32.     By this reference Plaintiff incorporates the allegations of paragraphs 1 - 31 as if here fully rewritten.

33.     By Huston obtaining Plaintiff's driver's license on two occasions while having no job-related purpose in doing so; by Huston providing to a younger employee with the mentoring he had promised Plaintiff; by Huston and Pickut failing to evaluate Plaintiff pursuant to Maryhaven's established practices; by Huston commenting that when he is in this seventies he envisioned laying on the beach every day and by Huston telling Plaintiff that she would be terminated when there was no just cause to do so, Maryhaven, Huston and Pickut violated R.C. §4112.02(L)'s prohibition of age discrimination.

34.     By Pickut transferring Plaintiff to the South High Street Unit without having properly evaluated her performance; by Fillibeck failing to provide Plaintiff with effective training or assistance in preparing that unit's specified written documentation, including assessments and treatment plans; by Fillibeck failing to investigate why the corrections Plaintiff made to her documentation were not saved in Maryhaven's CATT system; by Fillibeck canceling all of the last three weekly supervisory sessions she was to conduct with Plaintiff; by Fillibeck failing to read Plaintiff Memorandum of Achievements and by all Defendants participating in Plaintiff's without just cause termination, Maryhaven, Pickut, Huston and Fillibeck have violated Plaintiff's R.C. §4112.02(L)'s right to be free of age discrimination.

9

35. The foregoing actions of Maryhaven, Huston, Pickut and Fillibeck were intentional or taken with reckless disregard of Plaintiff's right to be free of unlawful age discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against each Defendant.

## SECOND CAUSE OF ACTION

(Age Discrimination – Violation of Age Discrimination in Employment Act)

36. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 35 as if here fully rewritten.

37. By Maryhaven's agent Huston obtaining Plaintiff's driver's license on two occasions while having no job-related purpose in doing so; by Huston providing to a younger employee the mentoring he had promised Plaintiff; by Huston and Maryhaven's agent Pickut failing to evaluate Plaintiff pursuant to Maryhaven's established practices; by Huston commenting that when he is in this seventies he envisions laying on the beach every day and by Huston telling Plaintiff that she would be terminated when there was no just cause to do so, Maryhaven, by virtue of the unlawful acts of its agent, violated 29 U.S.C. §623(a)'s prohibition of age discrimination.

38. By Maryhaven's agent Pickut transferring Plaintiff to the South High Street Unit without having properly evaluated her performance; by Maryhaven's agent Fillibeck failing to provide Plaintiff with effective training or assistance in preparing that unit's specified written documentation, including assessments and treatment plans; by Fillibeck failing to investigate why the corrections Plaintiff made to her documentation were not saved in Maryhaven's CATT system; by Fillibeck canceling all of the last three weekly supervisory sessions she was to conduct with Plaintiff and by Fillibeck failing to read Plaintiff Memorandum of Achievements,

10

Maryhaven, by virtue of the unlawful acts of its agents, violated 29 U.S.C. §623(a)'s prohibition of age discrimination.

39. The foregoing actions of Maryhaven's agents were intentional or taken with reckless disregard of Plaintiff's right to be free of unlawful age discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against Maryhaven.

## THIRD CAUSE OF ACTION

(Disability Discrimination - Violation of R.C. §4112.02(A) )

40. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 39 as if here fully rewritten.

41. By Huston reportedly telling Pickut he believed Plaintiff was in "cognitive decline," Maryhaven and its agent Huston regarded Plaintiff as having a mental impairment and, thus, a disability per R.C. §4112.01(A)(13).

42. By Pickut transferring Plaintiff to the South High Street unit where she would be presented with unfamiliar documenting tasks when she had not been timely evaluated and had no disciplinary actions on her record, Pickut was functioning as Huston's cat's paw to set Plaintiff up for failure under Fillibeck's purported supervision in violation of R.C. §4112.02 (A).

43. By Pickut asking Plaintiff in the presence of Fillibeck if she was in cognitive decline; by Fillibeck failing to provide Plaintiff with meaningful training or assistance in performing the unfamiliar South High Street written assessments and written treatment plan procedures; by Fillibeck failing to investigate why Maryhaven's CATT system was not saving the requested corrections which Plaintiff had effectuated; by Fillibeck canceling all of the three final supervisory sessions scheduled with Plaintiff during which her criticisms (if any) of Plaintiff's

11

performance should have been discussed and pursuant to which Plaintiff should have been provided the same reasonable opportunity to correct those criticisms that Maryhaven gives to employees who are not regarded as disabled; by Fillibeck issuing emails critical of Plaintiff's performance which were not shared with Plaintiff; and by Fillibeck declining to read Plaintiff's Memorandum of Achievements, thereby reflecting her stereotyping of Plaintiff as a person with a mental impairment, i.e., having a disability, Maryhaven, Pickut, Huston and Fillibeck violated R.C. §4112.02(A)'s prohibition of unlawful disability discrimination.

44. The foregoing actions of Maryhaven, Pickut, Huston and Fillibeck were intentional or taken with reckless disregard of Plaintiff's right to be free of unlawful disability discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against each of said Defendants.

## FOURTH CAUSE OF ACTION

(Disability Discrimination - Violation of the Americans with Disabilities Act)

45. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 44 as if here fully rewritten.

46. By Maryhaven's agent Huston reportedly telling Maryhaven's agent Pickut that he believed Plaintiff was in "cognitive decline," Maryhaven, through its agents Huston and Pickut, regarded Plaintiff as having a mental impairment and, thus, a disability per 42 U.S.C. §12112(a).

47. By Pickut transferring Plaintiff to the South High Street unit where she would be presented with unfamiliar documenting tasks when she had not been timely evaluated and had no disciplinary actions on her record, Pickut was functioning as Huston's cat's paw to set Plaintiff up for failure under Fillibeck's purported supervision in violation of 42 U.S.C. §12112(a).

12

48. By Maryhaven's agent Pickut asking Plaintiff in the presence of Maryhaven's agent Fillibeck if she was in cognitive decline; by Fillibeck failing to provide Plaintiff with meaningful training or assistance in performing the unfamiliar South High Street written assessments and written treatment plan procedures; by Fillibeck failing to investigate why Maryhaven's CATT system was not saving the requested corrections which Plaintiff had effectuated; by Fillibeck canceling all of the three final supervisory sessions scheduled with Plaintiff during which her criticisms (if any) of Plaintiff's performance should have been discussed and pursuant to which Plaintiff should have been provided the same reasonable opportunity to correct those criticisms that Maryhaven gives to employees who are not regarded as disabled; by Fillibeck issuing emails critical of Plaintiff's performance which were not shared with Plaintiff; and by Fillibeck declining to read Plaintiff's Memorandum of Achievements, thereby reflecting her stereotyping of Plaintiff as a person with a mental impairment, i.e., having a disability, Maryhaven, by virtue of the unlawful acts of its agents, violated 42 U.S.C. §121121(a)'s prohibition of unlawful disability discrimination.

49. The foregoing actions of Defendants Maryhaven's agents were intentional or taken with reckless disregard of Plaintiff's right to be free of unlawful disability discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against Defendant Maryhaven.

**FIFTH CAUSE OF ACTION**

(Disability Discrimination - Violation of 42 U.S.C. §12112(b)(4))

50. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 49 as if here fully rewritten.

13

51. By Maryhaven's agent Huston expressing implicit resentment of Plaintiff remaining in the active work force in order to provide financial resources for her disabled son in the context of Plaintiff having declined to take and give attention to work while on vacation due her obligation to attend the son's medical and mental therapy sessions; by Huston's hyper-critical assessment of Plaintiff's work after she declined to carry work with her on vacation because it would interfere with her attendance at her disabled son's medical and mental therapy commitments; by Huston advising Plaintiff that he had made the decision to terminate her employment even though there was no just cause to do so and when Plaintiff's disciplinary record was completely clean; and by Maryhaven subsequently discharging Plaintiff—with full knowledge of Plaintiff's son's disability—Maryhaven denied Plaintiff a job and benefits that it does not deny to employees who are not related to or associated with disabled individuals, in violation of the anti-discrimination provisions of 42 U.S.C. §12112(b)(4).

**PRAYER FOR RELIEF**

52. Wherefore, Plaintiff prays for the following relief:

A. On her First Cause of Action an award of her lost wages and benefits in an amount to be proven at trial, but not less than $25,000, including pre-judgment and post-judgment interest; an award of $250,000 in punitive damages against each Defendant; and an award of such reasonable attorney's fees as may be allowed by the court.

B. On her Second Cause of Action, an award of her lost wages and benefits in an amount to be proven at trial but not less than $25,000, including pre-judgment and post-judgment interest; an award of $300,000 in punitive damages against Maryhaven; and an award of such reasonable attorney's fees as may be allowed by the court.

14

C. On her Third Cause of Action, an award of her lost wages and benefits in an amount to be proven at trial, but not less than $25,000, including pre-judgment and post-judgment interest; an award of $250,000 in punitive damages against each Defendant; and an award of such reasonable attorney's fees as may be allowed by the court..

D. On her Fourth Cause of Action, an award of her lost wages and benefits in an amount to be proven at trial but not less than $25,000, including pre-judgment and post-judgment interest; an award of $300,000 in punitive damages against Maryhaven; and an award of such reasonable attorney's fees as may be allowed by the court.

E. On her Fifth Cause of Action an award of her lost wages and benefits in an amount to be proven at trial but not less than $25,000, including pre-judgment and post-judgment interest; an award of $300,000 punitive damages against Maryhaven; and an award of such reasonable attorney's fees as may be allowed by the court.

F. On her First, Second, Third and Fourth Causes of Action, an order of reinstatement, with back wages and the value of applicable employee benefits from and including September 27, 2019 until reinstated; an award of pre-judgment and post-judgment interest on said unpaid wages and benefit values until they are paid and Plaintiff is reinstated with the then applicable comparable wage rate and then applicable comparable employee benefits.  In the event it is determined that Plaintiff's reinstatement at Maryhaven in a position comparable to the Counselor III position previously held is not possible, an award of front pay at the $43,000 per annum rate, plus the value of benefits, for a minimum of five years from the entry of judgment herein.

F. On all of her Causes of Action, a permanent injunction against all Defendants enjoining them from, in the future, engaging in the unlawful practices set forth herein;

G.. An award of all court costs against the Defendants; and

15

H. Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

*/s/ Dennis D. Grant*
Dennis D. Grant (0022014)
Trail Attorney for Plaintiff Carolyn Leick
DENNIS GRANT LAW OFFICES
445 Hutchinson Ave., Suite 840
Columbus, OH 43235
Ph. (614) 4826-4927
dgrant@dennisgrantlaw.com
Fx. (614) 505-8435

## JURY DEMAND

Plaintiff demands trial by jury of the maximum number of persons permitted by law on all issues herein triable to a jury.

*/s/ Dennis D. Grant*
Dennis D. Grant (0022014)