# IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO

Carolyn Leick
2405 Marblevista Blvd.
Columbus, OH 43204

    Plaintiff,

vs.

Maryhaven Inc.
1791 Alum Creek Dr.
Columbus, OH 43207

Ryan Pickut
2193 Parklawn Dr.
Lewis Center, OH 43035

Edwin Huston
5731 Albany Trace
Westerville, OH 43081

    and

Alicia Fillibeck
5282 Forest Run Dr.
Dublin, OH 43017

    Defendants.

Case No. 20CV-03-002354

Judge: Jenifer A. French

Case Type H

JURY DEMAND

## AMENDED COMPLAINT

1. Plaintiff Carolyn Leick brings this action against Defendants Maryhaven, Inc., Ryan Pickut, Edwin Huston and Alicia Fillibeck for violations of Ohio Revised Code Chapter 4112, including R.C. §4112.99, R.C. §4112.02(A) and R.C. §4112.02(L), as well as for Maryhaven Inc.'s

1

violations of the Age Discrimination in Employment Act (29 U.S.C. 621 et seq.) and the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).

2. By virtue of R.C. §4112.99, this Court has subject matter jurisdiction over Plaintiff's state law claims against all Defendants and concurrent jurisdiction over her federal law claims against Maryhaven, Inc.

3. Venue is proper in Franklin County as Defendant Maryhaven Inc.'s principal offices are located here, and Plaintiff performed her employment functions for it in Franklin County. The unlawful discriminatory acts of which Plaintiff complains also occurred here.

4. Plaintiff is a resident of Franklin County and is 81 years of age. She holds two master's degrees, a Doctor of Education degree, a Certificate of Advanced Study toward a Doctor of Counseling degree (abd) and an Ohio LPC (licensed professional counselor) license. Plaintiff's son, Thomas Leick, is afflicted by Cerebral Palsy and mild mental retardation.

5. Defendant Maryhaven, Inc. ("Maryhaven") is an Ohio non-profit corporation that provides services to clients whose diagnoses include mental illness and/or alcohol and other drug addictions, including emotional/mental counseling services to individuals who suffer from alcohol and/or narcotics addiction.

6. Defendant Ryan Pickut ("Pickut") is an employee of Maryhaven and functioned as Plaintiff's second-tier supervisor.

7. Defendant Edwin Huston ("Huston") was employed by Maryhaven and functioned as Plaintiff's first tier or "immediate" supervisor while she was assigned to Maryhaven's Alum Creek Drive "Federal Unit" from October of 2017 to June of 2019. Huston, in turn, was supervised by Pickut.

8. Defendant Alicia Fillibeck ("Fillibeck") was employed by Maryhaven and functioned as Plaintiff's immediate supervisor while she was assigned to Maryhaven's "South High Unit" from

June to September 26, 2019, at which time Plaintiff's employment was terminated. Fillibeck also was supervised by Pickut.

9. In a pre-hire interview, Huston advised Plaintiff that Maryhaven would provide a mentor to assist her in qualifying for the next higher license, the LPCC (Licensed Professional Clinical Counselor) license.

10. In October of 2017, Plaintiff was hired by Maryhaven as an Adult Outpatient Services addiction/mental illness "Counselor III." In connection with establishing her I-9 eligibility, Plaintiff provided Maryhaven's Human Resources Office with her driver's license. The Human Resources Office made a copy of it.

11. Initially, Plaintiff was assigned to Maryhaven's Federal Unit under Huston's supervision. After Plaintiff started, Huston asked to see her driver's license. Plaintiff complied with her supervisor's request. Several weeks later Huston again asked to see Plaintiff's driver's license. Although he offered no reason, Plaintiff again obliged. Huston then left the office with Plaintiff's license in hand and returned approximately 15 – 25 minutes later.

12. Subsequently Huston advised Plaintiff the mentor she had been promised instead would be providing her mentoring services to a Maryhaven Intern who was substantially younger than Plaintiff.

13. Huston told Plaintiff it was Maryhaven's practice to evaluate new employees every six months, including at the end of their probationary period and again on their first employment anniversary. Maryhaven's Employee Handbook states:

> Annual performance appraisals are conducted after the probationary period is satisfactorily completed. The annual appraisal is conducted on the approximate anniversary date of employment at Maryhaven.

3

14. Although Plaintiff was evaluated at the end of her six-month probationary period, neither Huston nor Pickut evaluated her on her first employment anniversary or thereafter, although Plaintiff did receive a salary increase after her first year.

15. As Plaintiff was preparing to depart for her second one-week vacation during May of 2019, Huston requested that she take work along. Plaintiff demurred, advising Huston that she would be busy attending medical appointments with her disabled son. Huston appeared to resent the son's medical appointments detracting from Plaintiff's willingness to work while on vacation. Huston stated: "Do you really have to work at your age? I thought that when I was seventy, I would be on the beach in Florida!" Plaintiff responded that she and her disabled son had significant financial needs which included medical and counseling appointments that Thomas had requested she attend. Plaintiff stated she had to continue working in order to meet those needs. And, on other occasions, Huston asked Plaintiff about why she was "still working?"

16. After Plaintiff returned from her 2019 vacation, Huston began criticizing her work which Plaintiff believes contained no more errors and was no less productive than that of the other counselors in the unit since the Federal Unit counselors routinely circulated their documentation to one another in an effort to detect inadvertent oversights.

17. Maryhaven's Employee Handbook provides:

> Poor job performance will be addressed in regular or supplemental performance evaluations. Poor performance . . . will normally not result in termination of employment until the employee has been notified of the performance deficiency and been given a reasonable opportunity to correct the deficiency.

No "regular or supplemental performance evaluations" were provided to Plaintiff by Huston or Pickut after her end-of-probation evaluation.

18. One of Huston's criticisms of Plaintiff was that she was a member of "the Establishment" (a label that connotes 'old and out of touch') who—according to Huston—naively believed the

4

addicts she counseled were capable of "improving" in their emotional stability and ability to remain sober. Huston, on the other hand, often stated that he believed most of the addicts he had placed on Plaintiff's roster were incapable of self-resurrection and, thus, virtually all of them should be classified as "non-improved." He faulted her for listing many of her counselees as "improved" or "improving" because that classification made it more difficult for the counselee's overseeing judicial officer to incarcerate him or her.

19. At one point after returning from her 2019 vacation, Huston informed Plaintiff that due to his alleged dissatisfaction with her performance she should look for employment elsewhere. He did not impose any time limit in connection with that initial directive. Subsequently, however, he informed Plaintiff that she would be released in one (1) month whether she then had or had not obtained other employment.

20. At the time Huston initially advised Plaintiff to seek work elsewhere, she had no written warnings regarding the quality or quantity of her work. Likewise, she had no disciplinary actions concerning either her conduct or attendance.

21. Huston subsequently advised Plaintiff that he had discussed her situation with Pickut and Pickut had decided to transfer her to the South High Unit where she would come under Fillibeck's supervision. Fillibeck was a new supervisor for the South High Outpatient Unit, having started in that position on the very day Plaintiff began working there. Plaintiff complied with Pickut's unsolicited transfer directive, believing refusal would result in her immediate termination.

22. Following Plaintiff's transfer to the South High Unit, Maryhaven hired Casey Grace, age approximately 36 – 37, as a counselor in the Federal Unit, thereby replacing Plaintiff with a younger employee.

5

23. On June 3, 2019 Plaintiff's transfer to the South High Unit was effectuated. There, she was instructed to perform written "assessments" of each of her counselees, a function which she personally had rarely performed while assigned to the Federal Unit. (Generally, Huston wrote the assessments of Plaintiff's counselees.) While the typical workload of the South High Unit counselors was two written assessments per week, Plaintiff voluntarily assumed a load of four per week so she could more quickly become familiar with the process. Additionally, most of the clients for whom Plaintiff wrote assessments asked her to be their counselor. She, thus, viewed the extra workload as a means of building her roster of "clients."

24. After working at the South High Unit for approximately one month, Maryhaven transferred counselor Crystal Bigly, approximate age 30, from its South High Detoxication Unit into the Adult Outpatient Unit where Plaintiff then was working.

25. After Plaintiff had been working in the South High Unit for approximately two months, she was directed to meet with Pickut and Fillibeck. In that meeting, Pickut asked Plaintiff if she was in "cognitive decline" (a condition generally recognized as being associated with age advancement). Plaintiff was taken aback by Pickut's assertion and responded: "No!" Pickut then said Huston had told him she was in cognitive decline. Based on that information, Plaintiff avers that Pickut, Huston and Fillibeck regarded her having a mental impairment.

26. In the South High Unit, the established practice was for each counselor to have a weekly one-hour "supervisory session" with his or her immediate supervisor. During Plaintiff's initial supervisory sessions Fillibeck indicated some dissatisfaction with her written assessments of her counselees. Fillibeck also requested that Plaintiff make "corrections" in some of her other counseling documentation, such as her "treatment plans." Completion of the counseling

6

0F113 - E99

documentation was viewed as important by the Defendants because the funding agencies could not be billed until that documentation was finalized.

27. Allegedly to assist Plaintiff in learning the South High Unit's written treatment plan procedure, Fillibeck assigned another South High Unit counselor to work with her on such plans. The assigned counselor, however, told Plaintiff that she herself was not very familiar with the written treatment plan process as Fillibeck wanted it done. Plaintiff found the purported assistance from such other counselor to be of little or no value.

28. Regarding the other corrections Fillibeck requested, Plaintiff faithfully made them, but it was noticed that they were not being saved within Maryhaven's CATT electronic information storage system. When Plaintiff reported this to Fillibeck, Fillibeck stated that it was merely "a problem with the CATT system" that Fillibeck herself had experienced.

29. On August 21, 2019 Plaintiff was informed that Maryhaven was dissatisfied and a decision as to whether she would be retained would be made by September 19, 2019. Plaintiff worked diligently on effectuating all "corrections" Fillibeck had asked her to make to her documentations. Further, on August 28, 2019 Plaintiff prepared and sent to Fillibeck and Pickut a Memorandum of Accomplishments recounting the progress she had made in productivity and documentation quality since being transferred to the South High Unit. Fillibeck, however, then went on a two-week vacation.

30. Upon returning from her vacation, Fillibeck cancelled all of the then pending three supervisory sessions she was to have with Plaintiff. Such supervisory sessions are important as they give the employee an opportunity to learn the supervisor's perception of the quality and quantity of her work output, as well as to learn the supervisor's suggestions for mechanisms or procedures that would help the employee improve her performance levels.

31. During the final week and one-half of Plaintiff's employment, Fillibeck issued three emails that stated criticisms of Plaintiff's work. Plaintiff, however, was not provided with copies of those emails prior to termination nor with the opportunity to attempt to rectify whatever aspects of her performance Fillibeck was criticizing. Plaintiff further avers that the reported practice at Maryhaven is to provide employees with timely periodic evaluations and an opportunity to correct any legitimate criticisms of their work.

32. Maryhaven's Employee Handbook states:

> Each employee has the right to review any disciplinary action with the Director of Human Resources and/or the President to present any circumstances or facts which he/she feels should be considered. . . . All recommendations of discharge will be subject to review for final decision by the President. . ... The employee will be afforded an opportunity to present his facts and have his or her work record reviewed.

33. Defendant's transfer of Plaintiff into its South High Unit ostensibly to be supervised by Fillibeck had allowed Maryhaven to replace her in the Federal Unit with the younger Casey Grace, who remained in such Federal Unit after Plaintiff was discharged.

34. On September 26, 2019, Plaintiff was called into a meeting with Fillibeck and a representative of Maryhaven's Human Resources Office. In the course of the meeting Plaintiff asked if Fillibeck had read her August 28 Memorandum of Achievements. Fillibeck admitted she had not. Plaintiff then was dismissed from employment. The Human Resources representative stated that the reason for the termination was that the "technology curve" at Maryhaven was "too steep" for Plaintiff. Following Plaintiff's dismissal, the younger Crystal Bigly was retained in the South High Unit and, on information and belief, assumed most of Plaintiff's duties there and serviced virtually all of Plaintiff's counselees.

35. Given Pickut's arbitrary decision to transfer Plaintiff to the South High Unit when he had not evaluated her and she had no disciplinary actions on her record; given Fillibeck's lack of

8

Franklin County Ohio Clerk of Courts of the Common Pleas- 2020 Apr 16 3:05 PM-20CV002354
0F113 - F2
Case: 2:20-cv-02178-ALM-CMV Doc #: 3 Filed: 05/22/20 Page: 16 of 105 PAGEID #: 30

experience as a supervisor of Adult Outpatient counselors; given Fillibeck's failure to provide Plaintiff with effective training in the unfamiliar procedures of such unit; given Fillibeck's cancellation of Plaintiff's last three scheduled supervisory sessions and given Fillibeck's admitted failure to read Plaintiff's Memo of Achievements, Plaintiff avers that her transfer to the South High Unit was made for no legitimate business reason other than to allow Pickut and Fillibeck to create documentation purportedly justifying Plaintiff's termination on the grounds of performance. Such transfer, thus, was in and of itself, an adverse employment action designed to assure Plaintiff's failure to be retained in employment.

### FIRST CAUSE OF ACTION
(Age Discrimination - Violation of R.C. §4112.02(L))

36. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 35 as if here fully rewritten.

37. By Huston obtaining Plaintiff's driver's license on two occasions with no legitimate purpose; by Huston providing to a younger employee with the mentoring he had promised Plaintiff; by Huston and Pickut failing to evaluate Plaintiff pursuant to Maryhaven's established policies; by Huston stating: "Do you really have to work at your age?;" by Huston telling Pickut that Plaintiff was in "cognitive decline;" by Huston's statement that Plaintiff was part of the "establishment" and, by Huston telling Plaintiff she would be terminated when there was no just cause to do so, Maryhaven and Huston violated R.C. §4112.02(L)'s prohibition of age discrimination.

38. By Pickut transferring Plaintiff to the South High Unit without having properly evaluated her performance; by Pickut's accusation that Plaintiff was in "cognitive decline;" by Fillibeck failing to provide Plaintiff with effective training in preparing that unit's unfamiliar written documentation tasks; by Fillibeck failing to investigate why Plaintiff's corrections were not being saved in the CATT system; by Fillibeck canceling all of Plaintiff's last three weekly supervisory

9

Franklin County Ohio Clerk of Courts of the Common Pleas- 2020 Apr 16 3:05 PM-20CV002354
0F113 - F3
Case: 2:20-cv-02378-ALM-CMV Doc #: 3 Filed: 05/06/20 Page: 10 of 15 PAGEID #: 91

sessions; by Fillibeck admittedly failing to read Plaintiff's Memorandum of Achievements and, by Fillibeck and Pickut participating in Plaintiff's termination without just cause, Maryhaven, Pickut, and Fillibeck violated Plaintiff's R.C. §4112.02(L)'s right to be free of age discrimination.

39. The foregoing actions of Maryhaven, Huston, Pickut and Fillibeck were intentional or taken with reckless disregard of Plaintiff's right to be free of unlawful age discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against each Defendant.

**SECOND CAUSE OF ACTION**
(Age Discrimination – Violation of Age Discrimination in Employment Act)

40. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 39 as if here fully rewritten.

41. By Maryhaven's agent Huston obtaining Plaintiff's driver's license on two occasions with no legitimate purpose; by Huston providing to a younger employee the mentoring he had promised Plaintiff; by Huston and Pickut failing to evaluate Plaintiff pursuant to Maryhaven's established policies; by Huston stating: "Do you really have to work at your age?;" by Huston telling Pickut that Plaintiff was in "cognitive decline;" by Huston's statement that Plaintiff was part of the "establishment" and, by Huston telling Plaintiff she would be terminated when there was no just cause to do so, Maryhaven violated 29 U.S.C. §623(a)'s prohibition of age discrimination.

42. By Maryhaven's agent Pickut transferring Plaintiff to the South High Unit without having properly evaluated her; by Pickut accusing Plaintiff of being in "cognitive decline;" by Fillibeck failing to provide Plaintiff with effective training in preparing that unit's unfamiliar written documentation tasks; by Fillibeck failing to investigate why Plaintiff's corrections were not being saved in the CATT system; by Fillibeck canceling all of Plaintiff's last three weekly supervisory sessions and, by Fillibeck's admitted failure to read Plaintiff's Memorandum of

10

Case: 2:20-cv-03178-CMV Doc #: 3 Filed: 07/06/20 Page: 11 of 15 PAGEID #: 42
Franklin County Ohio Clerk of Courts of the Common Pleas- 2020 Apr 16 3:05 PM-20CV002542
0F113 - F4

Achievements, Maryhaven--by the unlawful acts of its agents--violated 29 U.S.C. §623(a)'s prohibition of age discrimination.

43. The foregoing actions of Maryhaven through its agents were intentional, or taken with reckless disregard of Plaintiff's right to be free of unlawful age discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against Maryhaven.

### THIRD CAUSE OF ACTION
(Disability Discrimination - Violation of R.C. §4112.02(A))

44. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 43 as if here fully rewritten.

45. By Huston reportedly telling Pickut he believed Plaintiff was in "cognitive decline" Maryhaven, and its agent, Huston, regarded Plaintiff as having a mental impairment and, thus, being a person with a disability per R.C. §4112.01(A)(13).

46. By Pickut transferring Plaintiff to the South High Unit where she would be presented with unfamiliar documenting tasks when she had not been timely evaluated and had no disciplinary actions on her record, Pickut was functioning as Huston's cat's paw to set Plaintiff up for failure under Fillibeck's purported supervision in violation of R.C. §4112.02 (A).

47. By Pickut asking Plaintiff in the presence of Fillibeck if she was in cognitive decline; by Fillibeck failing to provide Plaintiff with effective training in performing the unfamiliar South High written assessment, written treatment plan and other written documentation tasks; by Fillibeck failing to investigate why Maryhaven's CATT system was not saving the requested corrections which Plaintiff had effectuated; by Fillibeck canceling all of the three final supervisory sessions scheduled with Plaintiff during which her criticisms (if any) of Plaintiff's performance should have been discussed and pursuant to which Plaintiff should have been provided the same

11

Franklin County Ohio Clerk of Courts of the Common Pleas- 2020 Apr 13 3:05 PM-20CV002543
0F113 - F5
Case: 2:20-cv-02378-ALM-CMV Doc #: 3 Filed: 07/06/20 Page: 12 of 113 PAGEID #: 93

reasonable opportunity to correct those criticisms that Maryhaven gives to employees who are not regarded as disabled; by Fillibeck issuing emails critical of Plaintiff's performance which were not shared with Plaintiff and, by Fillibeck admittedly failing to read Plaintiff's Memorandum of Achievements, thereby reflecting her stereotyping of Plaintiff as a person with a mental impairment, Maryhaven, Pickut, Huston and Fillibeck violated R.C. §4112.02(A)'s prohibition against unlawful disability discrimination.

48. The foregoing actions of Maryhaven, Pickut, Huston and Fillibeck were intentional or taken with reckless disregard of Plaintiff's right to be free of unlawful disability discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against each of said Defendants.

**FOURTH CAUSE OF ACTION**
(Disability Discrimination - Violation of the Americans with Disabilities Act)

49. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 48 as if here fully rewritten.

50. By Maryhaven's agent, Huston, reportedly telling Maryhaven's agent Pickut that he believed Plaintiff was in "cognitive decline," Maryhaven, through such agents, regarded Plaintiff as having a mental impairment and, thus, a disability per 42 U.S.C. §12112(a).

51. By Pickut transferring Plaintiff to the South High Unit where she would be presented with unfamiliar documenting tasks when she had not been timely evaluated and had no disciplinary actions on her record, Pickut was functioning as Huston's cat's paw to set Plaintiff up for failure under Fillibeck's purported supervision in violation of 42 U.S.C. §12112(a).

52. By Maryhaven's agent, Pickut, asking Plaintiff in the presence of Maryhaven's agent Fillibeck if she was in cognitive decline; by Fillibeck failing to provide Plaintiff with effective training or assistance in performing the unfamiliar South High written assessment, written treatment plan and

12

other written documentation procedures; by Fillibeck failing to investigate why Maryhaven's CATT system was not saving the requested corrections which Plaintiff had effectuated; by Fillibeck canceling all of the three final supervisory sessions scheduled with Plaintiff during which her criticisms (if any) of Plaintiff's performance should have been discussed and pursuant to which Plaintiff should have been provided the same reasonable opportunity to correct those criticisms that Maryhaven gives to employees who are not regarded as disabled; by Fillibeck issuing emails critical of Plaintiff's performance which were not shared with Plaintiff and, by Fillibeck admittedly failing to read Plaintiff's Memorandum of Achievements, thereby reflecting her stereotyping of Plaintiff as a person with a mental impairment, Maryhaven, by virtue of the unlawful acts of its agents, violated 42 U.S.C. §121121(a)'s prohibition of unlawful disability discrimination.

53. The foregoing actions of Defendant Maryhaven's agents were intentional, or taken with reckless disregard of Plaintiff's right to be free of unlawful disability discrimination. As a result of such actions, Plaintiff has lost her wages and employment benefits. Additionally, Plaintiff is entitled to an award of punitive damages and attorney's fees against Defendant Maryhaven.

**FIFTH CAUSE OF ACTION**
(Disability Discrimination - Violation of 42 U.S.C. §12112(b)(4))

54. By this reference Plaintiff incorporates the allegations of paragraphs 1 - 53 as if here fully rewritten.

55. By Maryhaven's agent Huston expressing implicit resentment of Plaintiff remaining in the active work force in order to provide financial resources for her disabled son in the context of Plaintiff having declined to perform work while on vacation due her obligation to attend her son's medical and mental therapy sessions; by Huston's hyper-critical assessment of Plaintiff's work after she declined to carry work with her on vacation because it would interfere with her attendance at her son's medical and mental therapy commitments; by Huston advising Plaintiff that he had

13

made the decision to terminate her employment when Plaintiff's disciplinary record was completely clean and even though there was no just cause to do so, and by Maryhaven subsequently discharging Plaintiff, with full knowledge of Plaintiff's son's disability, Maryhaven denied Plaintiff a job and benefits that it does not deny to employees who are not related to disabled individuals, in violation of the anti-discrimination provisions of 42 U.S.C. §12112(b)(4).

### PRAYER FOR RELIEF

56. **Wherefore**, Plaintiff prays for the following relief:

A. On her First Cause of Action: Back pay and lost benefits in an amount of not less than $25,000; an award of $250,000 in punitive damages against each Defendant and attorney's fees.

B. On her Second Cause of Action: Back pay and lost benefits in an amount of not less than $25,000; an award of $300,000 in punitive damages against Maryhaven and attorney's fees.

C. On her Third Cause of Action: Back pay and lost benefits in an amount of not less than $25,000; an award of $250,000 in punitive damages against each Defendant and attorney's fees.

D. On her Fourth Cause of Action, an award of her lost wages and benefits in an amount not less than $25,000; an award of $300,000 in punitive damages against Maryhaven and attorney's fees.

E. On her Fifth Cause of Action an award of her lost wages and benefits in an amount not less than $25,000; an award of $300,000 punitive damages against Maryhaven and attorney's fees.

F. On her First through Fourth Causes of Action, an order of reinstatement from and including September 27, 2019; pre-judgment and post-judgment interest on her unpaid wages and benefits until so reinstated. In the event it is determined reinstatement a position comparable to the position previously held is not possible, an award of front pay at the $43,000 per annum rate, plus the value of benefits, for a minimum of five years from the entry of judgment herein.

14

F. On all of her Causes of Action, a permanent injunction against all Defendants enjoining them from, in the future, engaging in the unlawful practices set forth herein.

G. An award of all court costs against the Defendants; and

H. Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

/s/Darlene Chavers (0038745), Trail Attorney
/s/Dennis D. Grant (0022014)
DENNIS GRANT LAW OFFICES
445 Hutchinson Ave., Suite 840
Columbus, OH 43235
Ph. (614) 4826-4927
dgrant@dennisgrantlaw.com
Fx. (614) 505-8435

**JURY DEMAND:**

Plaintiff demands trial by jury of the maximum number of persons permitted by law on issues herein triable to a jury.

/s/ Dennis D. Grant   (0022014)

15